## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

JOSHUA M. FEATHERSTON                                    PLAINTIFF
ADC #154947

V.                          No. 4:22-CV-154-BSM-JTR

CHRIS HORAN, Doctor, WellPath; and
BRUCE WARREN, Senior Mental Health Counselor          DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Brian Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.  Introduction

On February 15, 2022, Plaintiff Joshua M. Featherston ("Featherston"), a prisoner in the Arkansas Division of Correction ("ADC"), filed a *pro se* § 1983 Complaint. Featherston alleged that, while he was incarcerated in the Tucker Maximum Security Unit ("Tucker-Max"), four ADC employees and one medical

doctor working for the ADC's medical contractor violated his constitutional rights. *Doc. 2*. Featherston alleged that, after he was raped by a fellow inmate in 2017 and 2021, Defendants denied him adequate mental health and medical treatment and conspired to cover up the rapes. *Id. at 5–13*.

Many of Featherston claims were dismissed at the screening stage[1]— either because the claims fell outside the three-year statute of limitations or because Featherston failed to state a viable claim. *Doc. 14; Doc. 20*. Thus, after screening, Featherston was allowed to proceed only with his claims against Defendants Bruce Warren and Chris Horan for allegedly failing to provide him adequate medical care beyond February 15, 2019. *Doc. 14 at 10–11; Doc. 20*.

ADC Defendant Warren has filed a Motion for Partial Summary Judgment (*Doc. 45*), a Brief in Support (*Doc. 46*), and a Statement of Undisputed Facts (*Doc. 47*) arguing that, because Featherston failed to fully and properly exhaust his administrative remedies, his deliberate indifference claim should be dismissed, without prejudice. *Docs. 47–49*. Similarly, Medical Defendant Dr. Horan has filed a separate Motion for Summary Judgment on the issue of exhaustion, Brief in Support, and Statement of Undisputed Fact. *Docs. 53–55*.

---

[1] *See* 28 U.S.C. § 1915A.

Featherston filed Responses to both Motions for Summary Judgment along with Briefs in Support and Statements of Disputed Fact. *Docs. 66–71*. Dr. Horan filed a Reply. *Doc. 72*. Thus, the issues are joined and ready for disposition.[2]

## II. Discussion

### A. The PLRA's Mandatory Exhaustion Requirements

The PLRA requires prisoners to exhaust all available administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield,* 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires prisoners to: (1) *fully and properly* exhaust their available administrative remedies *as to each claim* that is later raised in a § 1983 action; and (2) complete the exhaustion process *before* initiating the § 1983 action. *Jones,* 549 U.S. at 211, 219–20, 223–24; *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton,* 752

---

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson,* 477 U.S. at 249–50. The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

F.3d 1136, 1141–42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, Featherston must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

The relevant ADC directives and regulations governing exhaustion require that, in connection with each claim, a prisoner must, among other things: (1) "specifically name each individual involved;" (2) *state only one problem or issue per grievance*; and (3) include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." *See* AD 19-34 § IV(C)(4), (D)(2), & (E)(2).

The grievance forms themselves also contain these instructions to ensure prisoners are aware of them. *Id*. at Att. I ("Briefly state your *one* complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how you were affected."). If an ADC inmate wishes to grieve more than one issue, he or she "must use a separate [grievance] form for each issue[, as] [o]nly one issue will be addressed in the response to a grievance." *Id.* at § IV(D)(2). Any [a]dditional problems/issues contained in the grievance will not be addressed and will not be

considered as exhausted." *Id.* The ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies *as to all defendants at all levels* of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. *Id.* at § IV(N) (emphasis added); *see also Id.* at § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance *before* filing a lawsuit).

Thus, Featherston was required to fully and properly exhaust his deliberate indifference claim against each Defendant by raising and pursuing it through all three steps of the ADC's grievance process. *Id.* at §§ IV(D)–(G). This required him to file: (1) "Step One" informal resolutions within fifteen days of each incident which named each Defendant and explained their involvement in his complaint; (2) "Step Two" formal unit-level grievances raising that complaint within three working days of the denial of the informal resolutions; and (3) "Step Three" appeals to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Step Two decision on each of his grievances. *Id.*

### B. Featherston's Relevant Grievances

There are three grievances relevant to Featherston's claims against Warren and Dr. Horan: MX-21-01653, MX-21-01656, and WR-21-00523. The Court will review each in turn.

5

### 1.  MX-21-01653 (*Doc. 47-3*)

In MX-21-01653, Featherston grieved that, after he reported being raped by a fellow inmate on November 11, 2018, Defendant Warren "refused to give him mental health treatment." *Doc. 47-3 at 5*. Then, when he was raped again on January 8, 2019, Warren "worked with security to cover up the rape on 1-8-19." *Doc. 47-3*. Featherston pursued this grievance through the first two steps of the ADC's grievance procedure, but the parties disagree about whether the third step of the grievance procedure was made available to Featherston. *Doc. 67 at 59, 68–69*. This dispute is immaterial.

Featherston only remaining claim against Warren is a deliberate indifference claim based on Warren's alleged failure to provide him mental health treatment "*beyond* February 15, 2019." *Doc. 14 at 10–11* (emphasis added)*; Doc. 20*. In MX-21-01653, Featherston refers to Warren's failure to provide mental health treatment *prior* to January 8, 2019. He did *not* explicitly grieve any continued denial of mental health treatment that extend beyond February 15, 2019. Thus, the conduct grieved in MX-21-01653 is separate and distinct from the allegations Featherston is currently pursuing, and he cannot rely on that grievance to establish that he fully and properly exhausted any claim he is asserting in this action.

### 2. MX-21-01656 (*Doc. 70 at 55, 57–58*)

In MX-20-01656, Featherston grieved that, after he was raped on January 8, 2019, Dr. Horan "retaliated against [him]…by refusing [him] proper medical treatment." *Doc. 70 at 55*. He asserted that, instead, Dr. Horan "sodimized" him and performed "an illegal cavity search" by conducting a rape kit test on him. *Id.* Again, the parties dispute whether the third step of the grievance procedure was made available to Featherston. Again, the dispute is immaterial.

After screening, Featherston was allowed to proceed on a single claim against Dr. Horan: a deliberate indifference claim based on Dr. Horan's alleged failure to provide him mental health treatment "*beyond* February 15, 2019." *Doc. 14 at 10–11* (emphasis added)*; Doc. 20*. In MX-21-01656, Featherston clearly refers to Dr. Horan's failure to provide him adequate medical treatment *on* January 8, 2019. Thus, the conduct grieved in MX-21-01656 is separate and distinct from the allegations Featherston is currently pursuing, and he cannot rely on that grievance to establish that he fully and properly exhausted any claim he is asserting in this action.

### 3. WR-21-00523 (*Doc. 67 at 63–64, 66*)

In WR-21-00523, Featherston stated that he gone "on hunger strike…because ADC and Wellpath have systematically worked together to cover up rape crimes" and would "remain on hunger strike until ADC and Wellpath come in compliance with federal law." *Doc. 67 at 63*. He grieved that "Attorney General Leslie

Rutledge…[was] defending ADC for the crimes that [had] been committed against [him]." *Id.* The official responding to the Step Two unit-level grievance[3] noted that Featherston had been seen by outside medical providers for his medical concerns and found the grievance to be "without merit" because Featherston had "been provided with medical care per [his] need." *Id.*

Featherston appealed the Step Two decision. *Id.* In the space provided for Featherston to state why he disagreed to the Step Two decision, he wrote that:

> …Mr. Warren and Doctor Horan knew that I had been raped on January 8th 2019 and treated me with the worse cruelty imaginable covered up that Inmate Osborn raped me and denied me all protection[,] medical care, and mental health care that I needed…I went on hunger strike and[,] because I did[,] I was finally given a Doctors Appt...

*Id.* At Step Three, the Director rejected the grievance because Featherston had "used the grievance form to make a statement, which is not proper procedure." *Id. at 66*.

Featherston argues that WR-21-00523 "was written in complete respects to [his] claims in this case" and that the Director violated ADC policy by not responding to his claim on the merits. *Doc. 67 at 10–18; Doc. 70 at 10–18*. Even if the Director erred by treating WR-21-00523 as a hunger-strike statement, rather than a complaint about a conspiracy to "cover up rape crimes," Featherston cannot rely

---

[3] Featherston's handwritten grievance form for WR-21-00523 is not included in the record. Accordingly, it is unclear if Featherston initiated a Step One informal resolution or used the ADC's emergency grievance procedure to immediately initiate a unit-level grievance. *See* AD 19-34 § III(F).

on WR-21-00523 to show that he exhausted his claims against Warren and Dr. Horan.

The ADC grievance procedure explicitly advises inmates that, in order to fully and properly exhaust their administrative remedies, they *must* name the "personnel involved" and "exhaust their administrative remedies *as to all defendants at all levels* of the grievance procedure." AD 19-34 §§ IV(E)(2), IV(N), Att. 1 (emphasis added). Complaints raised for the first time on appeal "*will not be addressed*." *Id.* § IV(G)(2) (emphasis added).

When Featherston initiated WR-21-00523, he did *not* name either Warren or Dr. Horan. Instead, he waited until he was appealing to Step Three to identify Warren and Dr. Horan as personnel involved in alleged conspiracy to "cover up rape crimes" and to complain that they had denied him "medical care [] and mental heath care." *Doc. 67 at 63*. Because Featherston failed to comply with the ADC grievance procedure, he cannot rely on WR-21-00523 to establish that he fully and properly exhausted any claim he is asserting in this action.

### C. Defendants' Motions Summary Judgment

In their Motions for Summary Judgment, Defendants argue that, based on the foregoing grievance history, Featherston failed to exhaust his deliberate indifference claims against them.

Featherston's only remaining claim against Warren and Dr. Horan is that they "were deliberately indifferent to his continued need for medical care that extended beyond February 15, 2019." *Doc. 14 at 10; Doc. 20*. Although Featherston grieved a denial of medical care by Warren and Dr. Horan in MX-21-01653 and MX-21-01656, those grievances did *not* cover the applicable time period of February 15, 2019 and beyond. Featherston also attempted to raise the issue in WR-21-00523 but failed to do so in compliance with the ADC grievance procedure. Because Featherston did not raise his deliberate indifference claims in any *properly* exhausted grievance, those claims against Warren and Dr. Horan should be dismissed, without prejudice, for failure to exhaust administrative remedies.

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendant Bruce Warren's Motion for Summary Judgment (*Doc. 47*) be GRANTED.

2.    Defendant Chris Horan's Motion for Summary Judgment (*Doc. 53*) be GRANTED.

3.    Featherston's deliberate indifference claims against Warren and Horan be DISMISSED, without prejudice, for failure to exhaust administrative remedies.

4.      Judgment be entered accordingly.[4]

DATED this 22nd day of August, 2023.


_____
UNITED STATES MAGISTRATE JUDGE

---

[4] Featherston's time-barred claims were dismissed *with* prejudice. *Doc. 20*. All other claims were dismissed without prejudice. *Id.*